IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Amanda Somers, Candidate for South Carolina State Senate District 5 in the June 12, 2012 South Carolina Primary Election, | ) C.A. No. 3:12-CV-1191-CHH-CMC-JMC ) ) OPINION AND ORDER ) ) |
| Candidate Plaintiff, | ) |
| & | ) |
| All Persons Entitled to Vote Under the Uniformed and Overseas Citizens AbsenteeVoting Act ex rel. Amanda Somers, | ) ) ) ) |
| Plaintiff, | ) |
| v. | ) |
| The South Carolina State Election Commission, | ) ) |
| Defendant.[1] | ) |

Plaintiff, Amanda Somers ("Somers"), filed this action on May 4, 2012, seeking declaratory and other equitable relief relating to the South Carolina primary election scheduled for June 12, 2012. The original complaint named a large number of Defendants and sought relief for a wide range of alleged violations of state and federal law. Somers has, however, narrowed her claims and now seeks relief on two grounds. First, she seeks relief under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c ("Section 5"), based on allegations that the state's procedures for transmitting ballots to military and overseas voters were changed without obtaining preclearance from the United

---

[1] This caption reflects the granting of Plaintiff's motion to amend her complaint including by limiting the parties on whose behalf and against whom she is proceeding. *See infra* Discussion § I.

States Department of Justice.[2] Second, Somers seeks relief under 42 U.S.C. § 1983 based on allegations that variations in transmission dates of state primary ballots to UOCAVA Voters by different county election commissions resulted in violation of equal protection rights guaranteed by the United States Constitution. *See* Dkt. Nos. 13, 23, 30.

The matter is now before the court on Somers' "Memorandum Re Standing and Merits of UOCAVA Claim" and related filings, which the court construes as a motion to amend the complaint and for injunctive relief. Dkt. Nos. 19, 23, 30. The only Defendant served, the South Carolina State

---

[2] The requirements for transmitting military and overseas ballots are set out in both state and federal statutes including: the Uniformed and Overseas Citizens Absentee Voting Act as amended by the Military and Overseas Voters Empowerment Act, 42 U.S.C. § 1973ff *et.seq.*, (collectively "UOCAVA"); and related provisions of South Carolina law including S.C. Code Ann. §§ 7-15-405, 7-15-406 and 7-15-460. For ease of reference, the court will refer to the persons entitled to vote under these sections as "UOCAVA Voters," the ballots addressed by these sections as "UOCAVA Ballots," and the corresponding laws and procedures as "UOCAVA Balloting Procedures."

Most critically for purposes of this order, UOCAVA requires states to "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). It further requires that, absent granting of a hardship exemption by the presidential designee, the state must transmit absentee ballots to UOCAVA Voters at least 45 days prior to an election for federal office. 42 U.S.C. § 1973ff-1(a)(8)(A).

A UOCAVA Voter may indicate a preference to receive the ballot electronically or by mail. 42 U.S.C. § 1973ff-1(f)(1). Absent designation of a preference by the UOCAVA Voter, "the State shall transmit the ballot by any delivery method allowable in accordance with applicable State law, or if there is no applicable State law, by mail." 42 U.S.C. § 1973ff-1(f)(2).

South Carolina has enacted implementing statutes "[t]o ensure that all South Carolina residents eligible to vote as provided by [UOCAVA], have the opportunity to receive and cast any ballot they would have been eligible to cast if they resided in and had remained in South Carolina[.]" S.C. Code Ann. § 7-15-460(A) (also referring to "absentee ballots for all elections for federal, state, and local offices"); *see also* S.C. Code Ann. §7-15-405 ("For the qualified electors of this State who are eligible to vote as provided by [UOCAVA], an absentee ballot . . . must be sent to the elector at least forty-five days prior to the primary election."); S.C. Code Ann. § 7-15-406 (requiring absentee ballots be sent to "qualified electors . . . who are eligible to vote as provided by [UOCAVA] . . . at least forty-five days prior to any election.").

Federal law speaks in terms of "transmitting" ballots by mail or electronically, depending on the UOCAVA Voter's preference. South Carolina law refers to "sending" ballots. For consistency, the court will use the terms "transmit" or "transmitting."

2

Election Commission ("Election Commission"), consents to amendment of the complaint to the extent the amendment narrows the parties and claims as indicated in Somers' recent filings but opposes Somers' request for injunctive relief. Dkt. No. 28. The Election Commission has also filed a motion to dismiss or for summary judgment. Dkt. No. 7. Both the Election Commission's opposition memorandum and its earlier-filed motion to dismiss challenge Somers' standing to pursue the claims asserted in this action.

For the reasons set forth below, the court grants Somers' motion to amend her complaint to narrow the parties and claims. The court further finds that Somers lacks standing to pursue these claims and, therefore, dismisses the action.

## BACKGROUND

The alleged change in practice was a consequence of the Election Commission's attempt to comply with both federal law and an injunction issued by the South Carolina Supreme Court ("State Court") in *Anderson v. South Carolina Election Commission, et al.* See Dkt. No. 7-6 (preliminary order in *Anderson* entered April 20, 2012). Though the ruling in *Anderson* is no longer at issue in this case, the circumstances giving rise to that action are significant here.

***Anderson* Background and Ruling.** *Anderson* was filed by two voters who challenged inclusion of certain candidates on the June 12, 2012, primary ballot. These voters argued that the challenged candidates were not qualified because they failed to comply with an express requirement of S.C. Code Ann. § 8-13-1356(B) that "[a] candidate must file a statement of economic interests . . . at the same time and with the same official with whom the candidate files a declaration of candidacy or petition for nomination." The candidates in question had failed to file their statements of economic interests ("SEI's") with the same official and at the same time they filed their

3

declaration of candidacy. An injunction precluding the Election Commission "from sending out the ballots affected by this matter until further order of this Court" was entered at the same time the State Court accepted original jurisdiction over the matter, April 20, 2012. Dkt. No. 7-6.

In its decision on the merits, the State Court concluded that Section 8-13-1356 required precisely what it said. The State Court further concluded that the separate provisions of S.C. Code Ann. § 8-13-365, which require electronic filing of various disclosure documents (including SEI's) did not conflict with or override the plain language of Section 8-13-1356.[3] *See* Dkt. No. 7-3 (*Anderson* Opinion No. 27120 entered May 2, 2012). On application for rehearing or clarification, the State Court held that delivering a copy of an already electronically-filed SEI with the declaration of candidacy satisfied the "filing" requirement of Section 8-13-1356, but that delivery of a receipt, electronically mailing a copy, or any other alternative or later delivery of the SEI did not.[4] *See* Dkt. No. 7-9 (*Anderson* Order entered May 3, 2012).

In issuing its decision, the State Court "direct[ed] the parties to file with the South Carolina Election Commission or the appropriate county election commission by noon on May 4, 2012, a list of candidates who complied with § 8-13-1356 as the statute is written and as has been interpreted

---

[3] Section 8-13-1356 reads, in relevant part, as follows: "A candidate must file a statement of economic interests for the preceding calendar year at the same time and with the same official with whom the candidate files a declaration of candidacy or petition for nomination." S.C. Code Ann. § 8-13-1356(B). Section 8-13-365 applies more generally to "all disclosures and reports required pursuant to Chapter 13, Title 8 and Chapter 17, Title 2." S.C. Code Ann. § 8-13-365(A). The covered disclosures include SEI's. It provides that these "disclosures and reports must be filed using an Internet-based filing system as prescribed by the [South Carolina State Ethics] Commission." *Id.*

[4] A summary of election laws and procedures published by the Election Commission was allegedly relied upon by some candidates. *See* Dkt. No. 1-1. ("Election Commission Summary"). This summary erroneously provided that delivery of a receipt to the party official, reflecting that the SEI had been electronically filed, would satisfy Section 8-13-1356. *Id.* p.4 ¶ g

4

by this Court." Dkt. No. 7-9 (*Anderson*, Order entered May 3, 2012. Ultimately, a large number of candidates were disqualified after a review of their filings in light of *Anderson*.[5]

**UOCAVA Ballots.** As noted above, faced with what was alleged to be a problem affecting candidates in the vast majority of the State's counties, the State Court enjoined the Election Commission from transmitting ballots "affected by" the issues raised in *Anderson*. In an effort to comply with this injunction and the federal mandate to transmit ballots for federal elections to UOCAVA Voters at least 45 days before the election, the Election Commission directed county election commissions to transmit UOCAVA Ballots for any federal primaries but not to include candidates for state positions. Dkt. No. 28-5 (email to county election commissions); Dkt. No. 28-9 ¶ 5 (Affidavit of Marci Andino); *see also* Dkt. No. 28-6 (correspondence to State Court). Not every county had federal candidates on a primary ballot. Dkt. No. 28-9 ¶ 7 (Andino affidavit explaining that only 25 of 46 counties were required to mail federal ballots). Thus, not every county election commission transmitted federal primary ballots. *Id.*

As noted above, *Anderson* directed political parties to recertify their candidates for state offices by noon on May 4, 2012. After issuance of that order and the required recertification, county election commissions were free to send complete ballots to UOCAVA Voters. *See* Dkt. No. 28-9 at 17 (instructions on Election Commission website advising, *inter alia*, that "once the court rules, complete ballots should be sent to any voter receiving the Special U.S. House Only UOCAVA

---

[5] In her original complaint, Somers argued that *Anderson* constitutes a violation of Section 5 of the Voting Rights Act because it changed state voting practices. Somers abandoned pursuit of this aspect of her Voting Rights Act claim through her Second Status Report, subsequent written requests to amend her complaint, and an oral request made during the hearing on Somers' request for injunctive relief. Dkt. No. 11 (Second Status Report); Dkt. No. 23 (Memorandum re Standing and merits of UOCAVA Claim); Dkt. No. 30 (Reply to Defendant's Response to Plaintiff's Memorandum Re Standing and Merits of UOCAVA Claim).

ballot."). On May 10, 2012, the Election Commission directed county election commissions to report on what ballots had been sent prior and subsequent to the period covered by the State Court injunction.[6] *See* Dkt. No. 28-9 ¶¶ 9-10 (Andino affidavit addressing communications with Department of Justice relating to sending of state primary ballots after injunction was issued and with county election commissions seeking reports). Counties transmitted UOCAVA Ballots at different times. Information provided at and prior to the hearing suggests that some counties may not have transmitted required ballots to UOCAVA voters even as of the date of the hearing.

In sum, faced with an alleged systemic problem of non-compliance with Section 8-13-1356, which sets forth qualifications for candidates to appear on the ballot, the State Court enjoined the Election Commission from "sending out" ballots until the concerns could be addressed. The Election Commission complied with this injunction, and also complied with federal requirements that ballots for federal elections be transmitted by a certain deadline. Ultimately, the State Court directed recertification of only those candidates who had complied with the plain language of the relevant statute. The Election Commission then took steps to ensure ballots were transmitted as quickly as possible to UOCAVA Voters.

## DISCUSSION

---

[6] As noted above, South Carolina has enacted implementing statutes "[t]o ensure that all South Carolina residents eligible to vote as provided by [UOCAVA], have the opportunity to receive and cast *any ballot* they would have been eligible to cast if they resided in and had remained in South Carolina[.]" S.C. Code Ann. § 7-15-460(A) (emphasis added); *see also* S.C. Code Ann. §7-15-405 ("For the qualified electors of this State who are eligible to vote as provided by [UOCAVA], an absentee ballot . . . must be sent to the elector at least forty-five days prior to the primary election."). An amendment to Section 7-15-460, which was precleared in August 2011, clarifies that the absentee ballots covered by this section are "for all elections for federal, state, and local offices[.]" Together, these statutes implement the requirements of UOCAVA (applicable only to elections for federal office) and extend the same protections and benefits to elections for state office.

Somers argues that the resulting change in UOCAVA Balloting Procedures constitutes a change requiring preclearance under Section 5 of the Voting Rights Act because separate ballots were prepared for federal and state offices and were transmitted at different times, contrary to prior practice. She also argues that transmission of state ballots at different times by different counties results in an "obvious equal protection problem." Dkt. No. 23 at 3-4.[7]

Because this is an action under Section 5 of the Voting Rights Act, this court requested, and the Chief Judge of the Fourth Circuit empaneled, a three-judge court.[8] At a hearing held by the three-judge court on May 14, 2012, the court granted Somers' motion to amend her complaint and dismissed her claims for lack of standing.

## I.   AMENDMENT OF COMPLAINT

In her Second Status Report filed on the morning of May 11, 2012, Somers stated that "[f]rom this point forward [she] will only seek relief in this venue as to the military ballot issue." Dkt. No. 19 at 1. In her Memorandum re Standing and Merits of UOCAVA Claim, filed later that same day, Plaintiff used a modified caption which indicated she was proceeding only in a representative status on behalf of "All Persons Entitled to Vote Under the Uniformed and Overseas Citizens Absentee Voting

---

[7] Somers does not identify the source of the right to equal protection on which her claim is based. However, as she refers to *Bush v. Gore*, 531 U.S. 98 (2000), the court presumes she relies on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Bush v. Gore,* 531 U.S. at 104-05 (stating that equal protection as guaranteed by the Fourteenth Amendment applies not just to "initial allocation of the [voting] franchise[,]" but also to "the manner of its exercise" and holding that a state must "avoid arbitrary and disparate treatment of the members of its electorate").

[8] Any change for which preclearance has not been obtained is unenforceable and subject to being enjoined by a federal court of three judges, constituted as specified in 28 U.S.C. § 2284 and 42 U.S.C. § 1973c. An injunction is the only relief available from the three-judge court. The only court with subject matter jurisdiction to address the merits of whether a change is entitled to preclearance is the United States District Court for the District of Columbia. *Id.*

Act" and only against the Election Commission. Dkt. No. 23. She included a request to "amend the caption as above to reflect the correct designation of parties at this point" and referred to the "remaining issue" as "relating to ballots already sent, or to be sent to military and overseas voters." *Id.* at 1.

Consistent with this narrowing, Somers included only two merits arguments. First, in support of her Section 5 claim, she argued that the "two-ballot system" was "a newly created practice that has not been precleared." Dkt. No. 23 at 3. Second, she argued that variations between counties as to when UOCAVA Ballots were mailed presented "an obvious equal protection problem" because some UOCAVA Voters would have a better chance of having their vote counted than others. *Id.* at 3-4.

In a reply memorandum filed shortly before the May 14, 2012 hearing, Somers again asked the court to "allow the amendment of the caption to reflect what remains in the case . . . for the convenience of the parties and the Court." Dkt. No. 30 at 1. Her arguments remained limited to the UOCAVA-based Section 5 and related equal protection claims.

At oral argument, Somers modifed her request to amend the caption. Specifically, she asked that the court allow her to remain a Plaintiff in her capacity as a candidate, in addition to pursuing claims in a representative capacity on behalf of UOCAVA Voters.[9]

At the conclusion of the May 12, 2012 hearing, the court orally granted Somers' request to amend the caption consistent with her narrowed claims. The court reconfirms that ruling here. This leaves Somers with two claims, one for violation of Section 5 of the Voting Rights Act based on the alleged modification of state procedures relating to sending a single ballot for state and federal races, and one for an alleged equal protection violation arising from differences between counties' mailing

---

[9] The modified caption used on both the Memorandum re Standing and Merits of UOCAVA Claim (Dkt. No. 23) and Somers' Reply (Dkt. No. 30) referred to Somers only in a representative capacity for UOCAVA Voters. It did not refer to her status as a candidate for office.

dates of ballots for state elections. Somers seeks to pursue both claims in a dual capacity, as a candidate and as a representative of UOCAVA Voters.

## II.  SOMERS' MOTION FOR INJUNCTIVE RELIEF

In her reply brief filed on May 14, 2012, prior to the court's hearing, Somers requested that the court enjoin the certification of the June 12, 2012 primary election until 45 days[10] have passed since the mailing of UOCAVA state ballots. Dkt. No. 30 at 2. The court construes this as a request for injunctive relief.

### A.  Injunction Standard

The following standard governs a three-judge district court's decision whether to grant an injunction in a Voting Rights Act Section 5 case: The court "may determine only whether Section 5 covers a contested change, whether Section 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate." *Lopez v. Montgomery County*, 519 U.S. 9, 23 (1996).

### B.  Standing

Before exercising jurisdiction over this matter, the court must assure itself that the action satisfies Article III's case or controversy requirements. U.S. Const. art. III, §2. The Election Commission asserts that these requirements are not satisfied because Somers lacks standing. To establish standing, (1) a plaintiff must have suffered an "injury in fact," which is an invasion of a legally protected interest that is "concrete and particularized"[11] and "actual or imminent," not conjectural or

---

[10] Somers requested a delay until "48 days" have passed, but all other references in this case are to transmitting ballots more than 45 days prior to elections.

[11] "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

9

hypothetical; (2) the injury must have been caused by the defendant's complained-of actions; and (3) a plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *Lujan*, 504 U.S. at 560-61. The plaintiff has the burden of establishing standing. *See id.* at 561.

**Candidate Standing.** The Election Commission argues that Somers has failed to show that she was or will be injured as a candidate because the State transmitted separate federal and state ballots to UOCAVA Voters.[12] Somers' original complaint failed to allege any particularized injury to her as a candidate based on the State's transmission of separate federal and state ballots. Somers' briefs to the court similarly failed to allege any injury as a candidate. During the May 14, 2012, hearing, the court inquired as to Somers' theory of standing based on her candidacy. Counsel for Somers failed to articulate any concrete and particularized injury that Somers has incurred or was likely to incur as a result of the transmission of separate federal and state ballots.[13] Somers, therefore, has no standing as a candidate to pursue a Section 5 claim.

---

[12] The Election Commission also argues that Somers has no standing because she is not a minority and non-minorities are required to "meet additional, more stringent, standing requirements" under the Voting Rights Act. Dkt. No. 28 at 11 (citing *Dutmer v. City of San Antonio*, 937 F. Supp. 587, 590-91 (W.D. Tex. 1996) (citing *Newman v. Voinovich*, 789 F. Supp. 1410, 1415 (S.D. Ohio 1992), *aff'd*, 986 F.2d 159 (6th Cir.), *cert. denied*, 509 U.S. 924 (1993)). *Dutmer* and *Newman*, however, involve claims for violation of Section 2 of the Voting Rights Act, not Section 5.

[13] In fact, the Election Commission contends Somers could not be injured by the decision to transmit separate federal and state ballots. The Election Commission notes that counties do not mail federal ballots to UOCAVA Voters who have requested a ballot for a primary in which there is no contested federal race. It is undisputed that Somers is a Republican candidate for Senate District 5 located in Congressional District 4. It is also undisputed that there is no contested federal Republican primary race in Congressional District 4. According to the Election Commission, none of the UOCAVA Voters requesting a Republican primary ballot in Somers' district would receive a separate federal ballot. Therefore, voters who have the ability to cast a vote in favor of Somers would receive one ballot (limited to state offices) even if the ballots for federal and state offices were transmitted together because there was no federal ballot to transmit.

10

To the extent that Somers pursues an equal protection claim as a candidate, the court also concludes that Somers has no standing because she has failed to allege an injury in fact and how she was denied equal protection of the laws.

***Ex Rel.* Standing**. The Election Commission also argues that Somers may not proceed *ex rel.* on behalf of UOCAVA Voters on either her Section 5 or equal protection claim. A party brings an action *ex rel.* when acting on behalf of another person.[14] Somers argues that she is bringing this action on behalf of UOCAVA Voters because "every single affected voter is necessarily outside the jurisdiction and the vast majority of which are plainly unable to assert their rights personally before this Court." Dkt. No. 24 at 2-3. The court, therefore, considers whether Somers has third-party standing to assert the rights of UOCAVA Voters.

The United States Supreme Court has recognized third-party standing in limited circumstances:

> We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Powers v. Ohio*, 499 U.S. 400, 410-11 (1991) (internal citations omitted). *See also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . [he] generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *LaRoque v. Holder*, 650 F.3d 777, 781-82 (D.C. Cir. 2011) ("This prudential limitation is meant to avoid 'the

---

[14] According to Black's Law Dictionary, "a suit *ex rel.* is typically brought by the government upon the application of a private party (called a relator) who is interested in the matter." Somers does not purport to bring this action on behalf of the state or federal government.

11

adjudication of rights which those not before the Court may not wish to assert' and to ensure 'that the most effective advocate of the rights at issue is present to champion them.'") (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80 (1978)).

Somers alleges that some UOCAVA Voters will have less time to receive, review, and return their ballots because the State transmitted federal and state ballots separately to UOCAVA Voters.[15] Even assuming Somers has sufficiently alleged that some UOCAVA Voters may be injured by the State's mailing of separate federal and state ballots to UOCAVA Voters, Somers has not established that she is entitled to assert the interests of UOCAVA Voters in this action. She has not alleged a close relationship to any UOCAVA Voter. She has not shown that any UOCAVA Voter wishes to assert his or her rights and is unable to bring this action. Although Somers argues that many UOCAVA Voters "are often incommunicado for long periods of time and difficult to reach" (Dkt. No. 24 at 2), Somers fails to recognize that UOCAVA Voters are not necessarily residing overseas.[16] And, UOCAVA Voters residing overseas have access to the courts through other means, such as through their powers of attorney. The court concludes that Somers does not have standing to bring either a Section 5 or equal protection claim on behalf of UOCAVA Voters.

The court, therefore, dismisses Somers' claims for lack of standing.

---

[15] It is undisputed that the federal ballots were transmitted more than 45 days prior to the June 12, 2012 election. It is less clear when the state ballots were transmitted.

[16] An absent uniformed services voter is, *inter alia*, "a member of a uniformed service on active duty who, by reason of such active duty, is absent from the place of residence where the member is otherwise qualified to vote." 42 U.S.C. §1973ff-6A.

12

## CONCLUSION

For the reasons set forth above, this action is dismissed.

IT IS SO ORDERED.

*Clyde H. Hamilton*
Clyde H. Hamilton
Senior United States Circuit Judge

*Cameron McGowan Currie*
Cameron McGowan Currie
United States District Judge

*J. Michelle Childs*
J. Michelle Childs
United States District Judge

May 16, 2012
Columbia, South Carolina